Good morning, Mr. Justice Kaczynski, Mr. Justice Hurwitz, and Mr. Justice Gould. I'm tempted to say there's no justice in the Ninth Circuit, but... You probably have talked to the White House and you know something that nobody else does. Go ahead. Thank you. I'd like to reserve four minutes. Okay. Keep an eye on the clock. Okay. Your Honors, unless the district court ruling is reversed, there will be a chilling effect on zealous advocacy. It will chill all attorneys, not just Cumas counsel. The ruling would therefore create real peril for attorneys, those that are in the business of settling cases, disputing insurance coverage issues, and representing insurers. It would also undo the case law that's been expanding the protection afforded to attorneys under anti-SLAP laws and litigation privilege. For example, in the mailing case... Well, if what's alleged here turns out to be true, it doesn't seem like this is something that should be protected. Your Honor, I would disagree, and I believe that the case law that deals with attorney's conduct supports... But this case began when your client sued the plaintiffs in this case, if you will, for more fees, right? Brought an arbitration. Correct, for the unpaid fees. And they responded by saying, bringing a lawsuit, which said, we don't owe you anything. In fact, if you want to fight about it, I think you owe us something. So I don't understand how they were trying to chill. I mean, if you'd never brought the arbitration, the case never begins, right? Sort of, Your Honors. Yes, Mr. Hersh, he filed the suit that initiated the action. And they respond? They responded by filing a different suit in federal court alleging broader conduct than just responding to the fee issue. The problem, Your Honors, is that the court record is ambiguous. For example, at the evidentiary record 15, which is a part of Judge Wu's order, there's a long footnote, footnote 11, that after the court decides to dismiss the breach of defense handling agreement claim, the breach of contract claim, against Mr. Hersh, saying that the conduct was not protected activities under the prong one of the anti-SLAPP statute, the court then goes into a long footnote, footnote 11, and explains that even if the facts may give rise to protected activity, and then it cites allegations in Traveler's complaint, that the claim is the fact that Hersh filed his petition in the first place is what caused Traveler to then sue in federal court. Well, of course. He thought he had an arbitration claim to get more fees. They thought he didn't have the right to bring an arbitration claim to get more fees. So they brought a lawsuit. And there's a contract claim, as I understand it. All the court said was, well, V.E. may have a contract claim, but Traveler's doesn't, right? Correct, that Traveler's could have a case against VTG but not against Hersh. And then in footnote 11, the court gives an advisory opinion to Traveler's how it could potentially plead it better against Hersh and goes on to say the court cannot yet determine the extent of the protected activity, even though in the footnote and in the body of evidentiary record 15, the court discusses that it's retaliatory conduct for Mr. Hersh filing his lawsuit. And that's the, herein lies the problem, because you have the case law mostly developed at the state court level, like Malin, which protected attorneys who allegedly engaged in civil extortion. You have the Peregrine case that protected attorneys who allegedly used tactics to illegally disrupt litigation. You have Flinton that protected attorneys who allegedly obtained criminal evidence, obtained evidence criminally. And you have Bergstein, which is the more recent one, Bergstein against Strzok and Levin, where the court protected attorneys who allegedly recruited a former general counsel and then used the general counsel's information against her own client, including privileged information, e-mails, and her court set of records. And then, of course, you have Thayer with protected attorneys who allegedly and fraudulently concealed settlement terms. That's the Kabatack case. And so each of these cases, you have clever pleadings by the plaintiffs trying to reach the conclusion that the protected conflict is actually unprotected and that it's mere incidental. I'm still having this difficulty, and here's where you have to help me. If you hadn't called the arbitration a lawsuit for a second, because for all intents and purposes it is, if you hadn't brought a lawsuit saying, travelers, you owe me a bunch of money, and they had brought this suit, I think your arguments would make a lot of sense to me, really more sense, but you filed a lawsuit saying you owe me a bunch of money, and they responded by saying, no, we don't, because you did all these bad things. And they also made a claim for money of their own, but put that aside for a second. They can't raise those defenses once you sue them for money? Some of the claims they cannot. You know, if the declaratory judgment, I may not take issue with that, but the breach of the agreements, the concealment, the 2860 cause of action, I think those are barred. I'd also like to point out. They may be barred, but are they barred by the SLAP statute? Yes. You may win on them eventually. And I also want to mention that when Mr. Hirsch, the appellant, filed his lawsuit, it was actually just a petition so that he can go to arbitration to dispute his fees. He didn't intend, and the pleading is clear in the record, that he didn't intend to allege other things other than owed fees, which were disputed. Maybe he didn't, but so what? I mean, they're entitled to raise defenses, right? Right. Defenses to the fee issues, which I think that that would be better suited for arbitration if they feel that Mr. Hirsch was, you know, overcompensated or he's been fully paid. You don't get to run their litigation. Correct. I know you prefer that they do it some other way, but they have defenses. Why aren't they entitled to raise defenses? They're not entitled to raise defenses, Mr. Judge Kaczynski, because the activity that Mr. Hirsch conducted, settling the U.N.P.S. coverage dispute, negotiating for that settlement, negotiating for the settlement of the cross-complaint called the amended SAR, those were all advocacy activities. Hirsch was always VDG's attorney, there's no doubt. Yeah, but he did owe some duties to travelers under California law. Of course he did. And they alleged you breached those duties by going off and without notifying us, acting in a way that prejudiced us. I have no idea how they're damaged by it since everything went away, but put that aside for a second. There's no form in which they can assert that? Well, I think that that gets to prong two, because prong one is he was petitioning. You know, he was acting as VDG's advocate. Who was he petitioning? He was negotiating the U.N.P.S. settlement because there was adversity there, and he had the issue with Mr. Koratz showing up at the court hearing. I mean, there are a lot of cases where CUMIS counsel and carriers get along and work well together. But there are other cases, which is why the CUMIS law was created, was there have been insurance carriers abusing insureds. That's how the CUMIS case law came about. And the issue here is that when Mr. Hirsch is acting as CUMIS counsel, he owes some statutory duties to the carrier. But he's not their attorney, and in anything coverage-related, the CUMIS statute and the case law developed from it state that he can keep as confidential, as privileged, his coverage. Here's my frustration with this, and I'm going to take a page from Judge Kaczynski's book. All that the judge said was, he didn't dismiss any claims here. All the judge said was, go try these, except for the ones I dismissed along the way that don't meet federal standards. So you may have a terrific case on the merits, but we're trying to figure out whether the case should have been dismissed without a trial and without a summary judgment hearing under the SLAP statute. So tell me why the SLAP statute entitles you to release, anti-SLAP statute. Yes, it should have been dismissed on the anti-SLAP statute because Hirsch's activities, every single one of them, were as VDG's zealous advocate in a CUMIS independent role. But they claim not. They claim that he had statutory duties under CUMIS, and he didn't comply with them. That's their claim. So, you know, you say it's not true, but why are you entitled to prevail on that at this stage? Why don't they get a chance to prove that? Because that's just a clever pleading. What Hirsch did is settling the U.N.P.S. agreement. I didn't go with being clever. Well, we're only dealing with pleadings here, clever or not. We haven't had a factual hearing. Right. Well, what they're trying to do is they're trying to plead around all the case law that this is anti-SLAP by saying it's not about the conduct, the litigation conduct, but it all is. I don't think you answered my question. The way that the case could be brought, if it's not going to be dismissed for anti-SLAP, is travelers should have sued VDG, and then VDG, if they had an issue, sued Hirsch. You're still not answering my question. My question is why aren't they entitled to raise these claims? I mean, you have brought the claim, and they say, look, you had responsibilities under California law that you, I mean, you meaning your client, didn't comply with. Why is that not something that they're entitled to raise? You know, you can call it clever pleading, you can call it anything you want to, but why aren't they entitled to raise it? Based on the anti-SLAP that's protected activity, but for pronged, too, because his activities were disclosed. For example, the settlement, the cross-complaint settlement, the e-mail record in the record shows that. They say, let's say it wasn't disclosed. That's a claim. May lose it at trial, but they... Or summary judgment. You can have cross-motion summary judgment, and then we can compare evidence. But why are you entitled to win on this at the anti-SLAP level? Several reasons. When it came to the $450,000... When lawyers say several reasons, it means they don't have a single good reason. Why don't you give me your best reason? Let's start with that. Okay. For the $450,000, the best reason is that Ms. Wassman, the traveler's attorney, wrote an e-mail to Mr. Hirsch before the mediation saying, we don't care what you get amount of money in the cross-complaint. And then at mediation, travelers in their own room negotiated the settlement without Hirsch or VDG's participation. That's for that issue. But that goes to prong two, to probability of success. It doesn't go to whether or not the activity was protected, does it? Well, I'm trying to answer Judge Kuczynski's question. There's a different question. My argument is that his activities were advocacy. They were in furtherance litigation to settle cases. So when you ask about that question, I'm addressing prong two, because the court acknowledged in several footnotes in the evidentiary record that even if the activities were protected, here's why it doesn't count. You know, here's why it's not barred. And I'm saying it's barred by the litigation privilege. Because Hirsch's activities were privileged as litigation, but also based on the record that the traveler's parties said that they don't want to know the settlement agreement amount. And it was agreed that that was the case in the record. But then further, the amended settlement agreement, the fact that it was negotiated, the best reasons why that is subject to anti-SLAPP and should be barred under litigation privilege is because travelers told Hirsch in the record, go settle the cross-complaint yourself. We're not addressing it. And their issue with the recitals, they're just merely recitals. Recital G says plaintiffs contend that the operative period is traveler's period. You're well over your time. I'm sorry, Your Honor. Okay. We'll hear from the other side. May it please the Court. Andrew McCloskey on behalf of Appelli Traveler's Casualty Insurance Company of America. Nothing in my colleague's argument meets the initial burden to show that travelers' claims arise out of protected speech or activity under Civil Code of Procedure section 425.16. We're essentially hearing the same arguments that Mr. Hirsch can do whatever he wants because he was representing his client, BDG. And that's simply not the appropriate application of the statute. The key point here and what the appellate misses is that travelers is not suing Hirsch for protected speech or conduct under the first prong of section 425.16. The first step in the anti-SLAPP statute analysis is to determine whether or not the conduct complained of even arises out of protected speech or right of petition. We assert that it does not. So he's settling a lawsuit, a potential lawsuit with potential other claimants, correct? Correct. I mean, nobody disagrees about that. Is that activity facially not subject to the litigation privilege or is it you're contending that it's not subject to the litigation privilege here because he did something else? Well, I think the settlements with the co-insurers would not be subject to the litigation privilege. That has nothing to do with advancing the interests of BDG in the actual habitability. Because this litigation is over. I'm trying to figure out, are settlement discussions subject to the litigation privilege? Well, I think we need to break the settlement discussions into the two that transpired and took place while the underlying action was pending. The first was with co-insurers where travelers had contribution rights and had placed those insurers on notice and was attempting to get them to participate in the defense and ultimate settlement of the case. Dealing with those insurers and entering into that co-insurer agreement, that is not protected conduct. That has nothing to do with advancing the interests of BDG in defending the claims that were asserted against it in the habitability case. Now, if you look at the other aspect of it, the settlement with the underlying plaintiffs, that would arguably be protected conduct. That obviously has something to do with advancing the interests. But the problem is that what you're saying is that the settlement with the plaintiffs because it said all the activity occurred during this period, it effectively prejudiced you in going against the other insurers, right? It absolutely did. Okay. But if his conduct in dealing with the other parties was privileged, how do you get to sue him just because that conduct had a bad side effect on you? Well, the way that we're looking at it is it's not so much that we're suing him because he entered into the agreement and negotiated with the underlying plaintiffs. The issue that we have is we had a dispute before that over whether or not the underlying agreement should include this operative period, attempted to limit the injury and damage to the traveler's policy period. We objected to that. Mr. Hirsch knew we objected to it. He knew that my client was not going to fund $1.1 million under a settlement agreement that included that language. Without us knowing, he went and changed it. And then he didn't disclose it to us. And now he had an obligation to disclose it. VDG had an obligation under the policies. There's a cooperation clause. There's other policy provisions that require that to be disclosed. Mr. Hirsch had an obligation to disclose it under Insurance Code Section 2860 as an independent counsel. There really can't be any legitimate dispute that he should have told us that he changed the agreement that Travelers was paying $1.1 million under. So it's that concealment that we say is not protected conduct. That has nothing to do with advancing VDG's interest in the underlying litigation. And that's really the crux of the claim. How are you damaged in this case now that we know that the other deals have all been made and there isn't any more money to collect from anybody? Well, now you're coming full circle back to the question that you presented to my colleague. And it is true that this case is a result of Mr. Hirsch petitioning for further fees. Travelers has already paid him an enormous amount of fees to defend VDG in this underlying action as independent counsel. And now he's petitioning for an additional $230,000 or so that he says are outstanding. I understand that, but you're also making an independent claim that you were damaged by his activities in some way. Well, we were because, first of all, with respect to the deck relief and then also the 2860 claim, well, strike that. With respect to the deck relief and the breach of contract claim, we think that some portion of that $265,000 that was recovered from the other insurers should be allocated to Mr. Hirsch for defense, and then there is no dispute over the $230,000. He's already been fully compensated. So that's one way that we've been damaged. That's more on the deck relief side of it. With respect to the other issues, we never would have paid the $1.1 million had we known about that operative period. That would not have happened in the first place. So the way that we've been damaged is because now we're having a difficult time. We have no rights, frankly, to recover contribution from the co-insurers who flat out refused to pay, wouldn't participate in settlement, and help us actually resolve the case. We could have gotten it done for something less than $1.1 million. And then the other way is by breaching 2860 and not disclosing things all along the way, we've been damaged because we paid Hirsch all of these fees to defend the claims against VDG, but there really was no defense going on here. It was all just this elaborate scheme to try and get insurance money, get a kickback from the underlying settlement, and then manipulate the settlement of the claim in a way that would just protect all of this. And so they end up getting a windfall recovery. Counsel, Judge Gould, if I could interject a question, please. Of course. Tell me if I'm misunderstanding this, but is Travelers making its claim here in its suit based on not protected communications as it sees it, but basically based on business matters like did Hirsch divert funds or conceal something about the settlement agreement? Are those litigation matters or are they just sort of business conduct? Your Honor, we would submit that that's business conduct. Travelers and Hirsch were not in litigation against one another. In theory, Travelers and Hirsch had an obligation to cooperate with one another, and so we view this as conduct that was separate and apart from the actual defense of the litigation against VDG. In our view, the concealment and the actual elaborate what I'll refer to as an insurance milking scheme is separate and apart from the defense of the underlying litigation. We would agree that it is a business dispute. Okay. Thank you. Thank you, Your Honor. Okay. Thank you. Thank you. I have nothing further. You are out of time. Would you like a minute for rebuttal? Yes, Your Honor. Thank you. Your Honors, Travelers is coming in here acting as if they're the victim by Mr. Hirsch and VDD, but the record is clear that it was represented by three sets of attorneys and a senior adjuster, and that when it came to the case events, Travelers was relying on its attorneys, not the Cummins counsel, because there was no trust and faith in each other. That's what the record shows. Counsel, could you answer the question? I'm sorry. Go ahead. Go ahead, Judge Gould. Please. Wait a second. Why doesn't it just mean you're going to win a trial? If you're right about this. I mean, I don't know that you are right about what you said, but why doesn't all that prove that you're going to win a trial? Because if the slap-it motion is not granted, it's going to chill attorneys like Hirsch, like other Cummins counsel, and other adversary attorneys that are in the business of litigating disputes, and that's what Hirsch was doing as VDD's attorney, litigating disputes, and now he's being sued by the carrier because of the outcome of certain events, all of which they actively participated in every step of the way. Okay. Could you answer the question that I asked your colleague? That is, are they basically challenging business conduct of Mr. Hirsch, as opposed to legal communications? No, Your Honor. Mr. Hirsch owed no fiduciary duty to travelers. He was VDD's attorney, and he had a statutory duty to report certain events to travelers, so they don't have a business issue in the pleading or in the record. What if he didn't report those events? Now, you contend that the record makes clear that he did, but I think the record shows a dispute. Assume for a moment that he didn't report those events. Is he then being sued for litigation decisions or business decisions? He's still being sued for litigation decisions in that particular instance. It's not business decisions because his conduct is as the attorney, not as a client. He's not the insured. He's the attorney for the insured, and he's zealously representing his client. Zealous is the operative word here. He received settlement monies for his client who is being sued. They got money on the cross complaint, and they got money from other carriers. And then their allegation is, and he kept some of those settlement monies, over and above the amount that they paid him, for services he rendered not on behalf of travelers' client, not on behalf of travelers in the New Orleans Communist Council, but on behalf of somebody else. So your argument is they can never bring that claim. Travelers makes that claim, but they don't provide any evidentiary record that Hirsch billed travelers. There's never an evidentiary record on a slap motion. That's our problem. Well, for prong two, there is a full evidentiary record of all the history because of the conduct. So for prong two, for the probability of success, we do have the evidentiary record. There was an evidentiary hearing in front of the judge? No. There were submissions on both sides. Yes. And travelers hasn't presented anything in their prong two element that Mr. Hirsch kept any money that he billed travelers for. But him settling the UMPS agreement was something that travelers said they didn't know because it wasn't on the bills that they received. And the amended SAR, the record is clear at page 242, the third paragraph, that Hirsch was fired. I'm sorry. Is he disputing that he received the money? It's not in the record whether he received it. Is this record clear that the money came out of the funds that were paid to settle this? Yes. Okay. You're talking about the $450,000? Yes. Yes, absolutely. And travelers was aware of that. Okay. But put aside, I asked you to assume that they weren't aware of it. There's no dispute in this record that the money that he used to pay himself for something came out of the funds paid by travelers, is there? No. Okay. Yeah, the $1.1 million was offered by travelers from their own mediation room. And then Mr. Castelblanco in his declaration says, he then went to VDG and Hirsch in a separate room and negotiated the cross-complaint settlement. And all along, travelers was aware this was happening. And when the settlement paperwork was prepared, the handwritten one that could be found at around record 675, a few pages into that as well, that it was clear that money from travelers' settlement to the plaintiffs was in part going to VDG on the cross-complaint. It was all disclosed in the record that's before this court. Okay. Thank you. Thank you, Your Honors. Is that all you were saying to me?
judges: Kozinski, Gould, Hurwitz